1

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)

2

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596

3

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

4

E-mail: sbogdanovich@bursor.com

5

*Attorney for Plaintiff*

6

7

## UNITED STATES DISTRICT COURT

8

### NORTHERN DISTRICT OF CALIFORNIA

9

10

DANIEL MANSFIELD, individually and on
behalf of all others similarly situated,

11

Case No.

12

                                        Plaintiff,

**CLASS ACTION COMPLAINT**

        v.

13

JURY TRIAL DEMANDED

14

STOCKX LLC,

15

16

                                        Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Daniel Mansfield brings this action on behalf of himself, and all others similarly situated against StockX LLC ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      For over five months, Defendant has nickel and dimed online purchasers on its website in violation of the California Civil Code § 1770(a)(29)(A).  Whenever a consumer visits the clothing website StockX.com and selects an item for purchase, they are not shown the total cost upfront.  Instead, consumers are quoted an artificially low "**BUY NOW for**" $ XXX.XX price which excludes all fees, only to sneak in a hidden "Processing Fee" after consumers click through various screens required to make a purchase.  To make matters worse, Defendant's fee is affirmatively disclosed for the first and only time on the final "Place Order" screen, *after* consumers input all their shipping and credit card information.  This cheap trick has enabled Defendant to swindle substantial sums of money from its customers.

2.      By analogy, if consumers were to walk into a brick-and-mortar shoe store, saw a pair of shoes on the shelf for sale for $129.00, grabbed those shoes, and took them to the checkout counter, they would expect to pay $129.00 to the shoe store, plus sales tax to the government.  If, *after* consumers swiped their credit card, they noticed in fine print on the credit card pad that they would *also* be charged a $7.42 "Processing Fee" for the service of having their shoes rolled the down the conveyor belt and the tag's barcodes scanned, they would reasonably be outraged.  And yet, this is exactly what StockX does every day through its online marketplace.

3.      Because StockX operates an online marketplace, it never needs to face the wrath of an angry customer in person.

4.      Not anymore.  To stop this practice, effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges other than either" "[t]axes or fees imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer."

5.      According to California Attorney General's Office, "[t]he law is 'intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.'"[1]  "Put simply, ***the price a Californian sees should be the price they pay.***"[2]

6.      For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other clothing purchasers for Defendant's sales in the state of California for actual damages, reasonable attorneys' costs and fees, and injunctive relief under California Civil Code §§ 1770(a)(29)(A) and 1770(a)(9).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant sells clothing items to consumers in the state of California through its website as part of its regular course of business and collects unlawfully applied fees from Californians.  Defendant targets consumers whom it knows to reside in California (based on shipping information provided during checkout).  Defendant also uses multiple ad networks—Google, Microsoft, LiveIntent, SmartAdServer, and Criteo—to track website user behavior and deliver targeted ads to Californian residents, like Plaintiff.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

///

///

///

---

[1] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

[2] *Id*. (Emphasis in original).

**PARTIES**

10.     Plaintiff Daniel Mansfield is an individual consumer who, at all times material hereto, was a citizen and resident of San Francisco, California.

11.     Plaintiff Mansfield purchased the Nike Air Zoom Pegasus Premium White Volt from Defendant in or around April 2025.

12.     During this transaction, Plaintiff was forced to pay Defendant's Processing Fee, which amounted to $12.78.

13.     As shown by the below image, Plaintiff utilizes Defendant's social login feature to access StockX with his Google Account.  This feature is called "Sign in with Google."



14.     Defendant makes its social login feature (allowing individuals to sign in with their Google, Apple, Facebook, and X.com accounts) available at checkout, at which time StockX shoppers can alternatively continue as a guest or sign up for StockX with their first name, last name, email address, and a password.  Shoppers who choose to use their first name, last name, email, and a password are prompted to affirmatively check a box that states: "I have read and agree to the Terms and Conditions and Privacy Policy."  On the other hand, shoppers like Plaintiff, who utilize either the social login feature or continue as a guest, are not prompted to affirmatively check such a box to agree to Defendant's Terms and Conditions and Privacy Policy.  This is depicted by the following images (showing the StockX website on the left and the StockX app on the right):



15.    To access StockX with a Google Account, Plaintiff and other "Sign in with Google" users are first asked to log in with their Google Account credentials.



1       16.    Then, Plaintiff and other "Sign in with Google" users are asked to "Continue" to

2  "Sign in to StockX."  On this screen, StockX shoppers are notified: "By continuing, Google will

3  share your name, email address, and profile picture with StockX. See StockX's Privacy Policy and

4  Terms of Service. You can manage Sign in with Google in your Google Account."  This screen

5  does not include hyperlinks to (or any text of) Defendant's Privacy Policy and Terms; does not

6  prompt Plaintiff and other "Sign in with Google" users to agree to Defendant's Privacy Policy and

7  Terms; and is the final step that is required to access StockX with a Google Account.



17.    At the time Plaintiff purchased his shoes, he was not aware that Defendant's

practices were unlawful under California Civil Code §§ 1770(a)(9) and 1770(a)(29)(A).  Plaintiff

was not browsing StockX in search of legal violations.  Plaintiff was instead browsing StockX

because he sincerely intended to purchase shoes, and he did, in fact, purchase those shoes.

18.    The transaction flow process that Plaintiff viewed on Defendant's website was

substantially similar as that depicted in this complaint.

19.    Defendant StockX LLC is a Michigan limited liability company with its principal

place of business in Detroit, Michigan.  Defendant offers buying and selling of sneakers, apparel,

1    electronics, collectibles, trading cards, and accessories throughout the United States, including in

2    the state of California.  Defendant owns and operates the universally accessible, interactive website

3    https://www.StockX.com, which website accepts orders from all the United States and delivers

4    products to all the states, including California, as part of its regular course of business.

<u>RELEVANT FACTUAL ALLEGATIONS</u>

6        20.    When a consumer visits Defendant's website, StockX.com, on the main page, they

7    can search for sneakers, shoes, apparel, accessories, and more.  *See* Figure 1.

**Figure 1**



16        21.    After a user clicks on an item, the purchase process begins and users are prompted

17    to either click "Place Bid" or "Buy Now".  *See* Figure 2.  At this point, the "total cost" of the item

18    is never shown, in violation of California Civil Code § 1770(a)(29)(A).  *See id.*  Instead, Defendant

19    quotes a "Buy Now for" price that is *not* the total cost.  *See id.*

**Figure 2**

22.     Once users click the "Buy Now" button (*see id.*), they are brought to a new screen where users are required to select an item size.  *See* Figure 3.  Instead of the previously-listed "Buy Now for" price, a user is confronted with a wide range of prices, as high as $43.00 *above* the previously-listed "Buy Now for" price.  *Compare* Figure 3 *with* Figure 2.

<strong>Figure 3</strong>



23.     Once users select an item size, they are brought to another screen to review their selection and click a "Next" button.  *See* Figure 4, next page.  Consumers need to act now, because at the very top of the screen, a bright red box with a fire symbol says the item is in "High Demand" and red text right below the box says that "67 people are interested in this product."  *See id.*  The second most prominent feature of this page is the bolded "**Buy Now $129**" price which excludes fees in larger text than anything else on the screen.  At the very bottom of this screen, in much smaller text, is an inflated "Subtotal" and a green "Next" button.  Underneath the subtotal in small, gray font is the language: "Includes Processing Fee. Final price calculated at checkout."  *See id.*

///

///

///

///

1

**Figure 4**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18        24.     Yet Defendant's Processing Fee is never affirmatively disclosed.  Instead, a user

19   must identify and click on a small, black arrow at the bottom of the page to determine a cost

20   breakdown, including the amount of the processing fee.  *See* Figures 5 and 6, next page.

21   Significantly, a consumer is *not* required to click the arrow at the bottom of the page and see the

22   breakdown of charges before clicking the green "Next" button.  And it is not entirely clear that the

23   arrow is even a *button*, unlike the green "Next" button.  As the Ninth Circuit cautioned, "just as

24   'there is no reason to assume that [users] will scroll down to subsequent screens simply because

25   screens are there,' there is no reason to assume the users will click on the settings menu simply

26   because it exists."  *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (quoting *Specht v.

27   Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.)).  "Only curiosity or

28

dumb luck might bring a user to discover the" breakdown of charges. *Wilson*, 944 F.3d at 1221 (*citing Specht*).

**Figure 5**



**Figure 6**



25.    There is a (?) symbol next to the "Processing Fee." *See* Figure 6.   If a consumer clicks on the (?) symbol, he or she discovers that the singular "Processing Fee" is actually a Russian nesting doll *for two fees*: "Includes processing and verification service." *See* Figure 7, next page.

///

///

///

///

**Figure 7**



26.     Even then, it is unclear why these vague "processing and verification service[s]" require charging consumers a fee separate and apart from the advertised $129.00 "Item Price." After all, consumers on StockX cannot buy *any* item from the website without paying for this "Processing Fee." In the brick-and-mortar context, no consumer would reasonably expect to have to pay a $7.42 "Processing Fee" for the service of having their shoes rolled down the conveyer belt and having the price tag's barcode scanned. Why, then, would it ever be acceptable for StockX to charge over seven bucks for this junk fee online?

27.     After consumers click the green "Next" button, Defendant interrupts the purchase flow by prompting the consumer to either log in, create an account, or checkout as a guest. *See* Figure 8, next page. Creating an account requires users to affirmatively check a box that states "I have read and agree to the Terms and Conditions and Privacy Policy." *See id.* But users who "Continue as Guest" do not. *See id.* They only need to enter an email address. *See id.* After a

1    user enters an email address, the "Continue as Guest" button changes color and allows the

2    consumer to proceed with their purchase.  *See id.*[3]

**Figure 8**



3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

25        28.     After consumers complete signing in or checking out as a guest, they are prompted

26    to input all their shipping address and credit card information and click another "Next" button.  *See*

27    Figure 9, next page.

28    _____
      [3] Email-address is redacted.

**Figure 9**



29.     After consumers complete inputting their address and credit card information, they are taken to the review order (Figure 10), and then place order (Figure 11) pages.  Again, at the top of the page, the bright red box warns users of "High Demand" and "67 people are interested in this product".  *See* Figures 10 and 11; *see also* Figure 4.  Only after users click the green "Review Order" button (Figure 10) is the Processing Fee *finally* disclosed to users.  *See* Figures 10-11, next page.

///

///

///

///

///

///

///

///

1

**Figure 10**

2



3

4

5

6

7

8

9

10

11

**Figure 11**

12

13

14



15

16

17

18

19

20

21

22

23

24    30.    *At no point* could a user ever "Buy Now for" "$129".  *Compare* Figure 2 *with*

25  Figure 11.  In other words, the total price of each item is *never* disclosed before a user clicks "Buy

26  Now" and either clicks on the small, black arrow at the bottom of the page (*see* Figures 5 and 6), or

27  otherwise reaches the final step in the checkout process prior to placing an order (*see* Figure 11).

28

---

1   Thus Defendant is "[a]dvertising, displaying, or offering a price for a good ... that does not include

2   all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

3       31.    What is more, the checkout flow and the disclosures Defendant presents to

4   consumers is the same whether they proceed via their web browser on a computer, as depicted in

5   Figures 1 through 11, or through Defendant's mobile iOS app (the "App").

6       32.    When a consumer downloads and opens the App, on the main screen, they can

7   search for sneakers, shoes, apparel, accessories, and more.  *See* Figure 12.

**Figure 12**



22       33.    After a user clicks on an item, the purchase process begins and users are prompted

23   to click "Buy or Bid".  *See* Figure 13, next page.  At this point, the "total cost" of the item is never

24   shown, in violation of California Civil Code § 1770(a)(29)(A).  *See id.*  Instead, Defendant quotes a

25   "Buy Now for" price that is *not* the total cost.  *See id.*

26   ///

27   ///

28   ///

1

**Figure 13**

2



3

4

5

6

7

8

9

10

11

12

13   34.   Once users click the "Buy or Bid" button (*see id.*), they are brought to a new screen

14   where users are required to select an item size. *See* Figure 14. Instead of the previously-listed

15   "Buy Now for" price, a user is confronted with a wide range of prices, as high as $44.00 *above* the

16   previously-listed "Buy Now for" price. *Compare* Figure 14 *with* Figure 13.

17

**Figure 14**

18



19

20

21

22

23

24

25

26

27

28

35.     Once users select an item size, they are brought to another screen to review their selection and click a "Next" button.  *See* Figure 15.  Consumers need to act now, because at the very top of the screen, a bright red box with a fire symbol says the item is in "High Demand" and red text right below the box says that "65 people are interested in this product."  *See id.*  The second most prominent feature of this page is a the bolded "**Buy Now $128**" price which excludes fees in larger text than anything else on the screen.  At the very bottom of this screen, in much smaller text, is an inflated "Subtotal" and a green "Next" button.  Underneath the subtotal in small, gray font is the language: "Includes Processing Fee. Final price calculated at checkout."  *See id.*

**Figure 15**



36.     Yet Defendant's Processing Fee is never affirmatively disclosed.  Instead, a user must identify and click on a small, black arrow at the bottom of the page to determine a cost breakdown, including the amount of the processing fee.  *See* Figures 16 and 17, next page.

Significantly, a consumer is *not* required to click the arrow at the bottom of the page and see the breakdown of charges before clicking the green "Next" button. And it is not entirely clear that the arrow is even a *button*, unlike the green "Next" button. As the Ninth Circuit cautioned, "just as 'there is no reason to assume that [users] will scroll down to subsequent screens simply because screens are there,' there is no reason to assume the users will click on the settings menu simply because it exists." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.)). "Only curiosity or dumb luck might bring a user to discover the" breakdown of charges. *Wilson*, 944 F.3d at 1221 (*citing Specht*).

**Figure 16**



**Figure 17**



37.    There is a (?) symbol next to the "Processing Fee." *See* Figure 6.   If a consumer clicks on the (?) symbol, he or she discovers that: "This fee makes it possible for StockX to process every item on our platform using a rigorous multi-step process so you can shop with confidence." *See* Figure 18.

**Figure 18**



38.    Even then, it is unclear why this vague "multi-step process" requires charging consumers a fee separate and apart from the advertised $128.00 "Item Price."  After all, consumers on StockX cannot buy *any* item from the website without paying for this "Processing Fee."  In the brick-and-mortar context, no consumer would reasonably expect to have to pay a $7.36 "Processing Fee" for the service of have their shoes rolled down the conveyer belt and have the price tag's barcode scanned.  Why, then, would it ever be acceptable for StockX to charge over seven bucks for this junk fee online?

39.    After consumers click the green "Next" button, Defendant interrupts the purchase flow by prompting the consumer to either sign up or log in.  *See* Figure 19, next page.  Signing up for an account allows but *does not require* users to fill out the fields asking for "First Name", "Last Name", "Email Address", and "Password".  *See id.*  And signing up for an account allows but *does not require* users to affirmatively check a box that states "I have read and agree to the Terms and Conditions and Privacy Policy."  *See id.*  Instead, they only need "Sign up with" Google, Apple, Facebook, or X, f/k/a Twitter.  *See id.*  After a user signs up with Google, Apple, Facebook, or X,

the consumer is directed to enter their address and payment information and to proceed with their purchase.

**Figure 19**



40.    After consumers complete inputting their address[4] and payment information, they are taken to the review order page. *See* Figure 20, next page. Again, at the top of the page, the bright red box warns users of "High Demand" and "65 people are interested in this product". *See id.*; *see also* Figure 15. The Processing Fee is still not disclosed to users. *See id.* Instead, a user must identify and click on a small, black arrow at the bottom of the page to determine a cost breakdown, including the amount of the Processing Fee. *See* Figure 20; *see also* Figures 16-18. Significantly, a consumer is *not* required to click the arrow at the bottom of the page and see the breakdown of charges before clicking the large "Buy with [Apple] Pay" button.

---

[4] Address is redacted.

**Figure 20**



41.     *At no point* could a user ever "Buy Now for" "$128". *Compare* Figure 13 *with* Figure 20. In other words, the total price of each item is *never* disclosed before a user clicks "Buy or Bid", selects a shoe size, and clicks on the small, black arrow at the bottom of the page (*see* Figures 16 and 17), or otherwise reaches the final step in the checkout process prior to placing an order and also clicks on the small, black arrow at the bottom of the page (*see* Figure 20). Thus Defendant is "[a]dvertising, displaying, or offering a price for a good ... that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A).

<u>**CALIFORNIA HIDDEN FEES STATUTE**</u>

42.     Effective July 1, 2024, California enacted California Civil Code § 1770(a)(29)(A), which provides that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either ... [t]axes or fees imposed by a

government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer[]" (Cal. Civ. Code § 1770(a)(29)(A)) is unlawful.  Cal. Civ. Code § 1770(a); *Compare with* Figures 2, 3, 4, 5, 7, and 10.

43.     This prohibition is designed to protect consumers.  As Senator Bill Dodd, a co-author of SB 478, stated in describing this new law: "'Californians are fed up with dishonest fees being tacked on to seemingly everything ... It's an underhanded trick to boost corporate profits at the expense of those who can least afford it.  Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front.'"[5]

44.     And according to Attorney General of California Rob Bonta, "'[w]e can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace[.]'"[6]

## CLASS ACTION ALLEGATIONS

45.     **Class**:  Plaintiff seeks to represent a class defined as all individuals in the state of California who purchased items using Defendant's website on or after May 16, 2022 (the "Class"). Excluded from the Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

46.     **Subclass**:  Plaintiff also seeks to represent a subclass defined as all individuals in the state of California who purchased items using Defendant's website on or after July 1, 2024 (the "Junk Fee Subclass") (collectively with the Class, the "Classes.").  Excluded from the Junk Fee Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

47.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the millions.[7]  The

---

[5] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (last visited Dec. 24, 2024).

[6] *Id.*

[7] According to the website traffic analytics company Similarweb, Defendant's website has received 79.69 million visits in the last three months, with 58.18.% of the website traffic coming from the United States. *See* https://pro.similarweb.com/#/digitalsuite/websiteanalysis/overview/website-

precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

48.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant failed to include all mandatory fees or charges when advertising, displaying, or offering a price for the items for purchase, in violation of California Civil Code § 1770(a)(29)(A), and whether Defendant advertised goods or services with intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9). The claims of the named Plaintiff are typical of the claims of the Classes in that the named Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to include all mandatory fees or charges in the advertising, displaying, or offering a price for the items, throughout the online item purchase process.

49.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes and members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

50.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer

---

performance/*/999/3m?webSource=Total&key=stockx.com.  Approximately 11.7% of the United States population resides in the State of California.  So assuming Californians visited Defendant's website in equal proportions to other Americans, then Defendant received over 5,424,546 visitors from the state of California during this time period.

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**California Civil Code § 1770(a)(9)**
**(On Behalf Of The Class)**

51.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

53.     Defendant violated California Civil Code § 1770(a)(9) by "[a]dvertising goods … with intent not to sell them as advertised" on the product selection screens depicted in Figures 2, 3, 4, 5, 7, and 10 of this Complaint. Specifically, Defendant advertised and expressly represented the price of shoes with intent not to sell them at the advertised "Buy Now for" price.

54.     As a result, Plaintiff and Class Members were harmed because they were forced to pay Defendant's unlawfully applied Processing Fees.

55.     Plaintiff and Class Members were also harmed by not having the total cost of their shoes disclosed upfront at the start of the purchase process. By not knowing the total cost of their shoes before selecting them for purchase from Defendant, Plaintiff and Class Members could not shop around for shoes from other shoe sellers like GOAT, Grailed, or Stadium Goods, just to name a few. As such, Plaintiff and Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its processing charges, Defendant was able to reduce price competition and cause consumers like Plaintiff and Class Members to overpay.

56.     Plaintiff and Class Members relied on Defendant's false and misleading representations of the advertised cost of the shoes in choosing to purchase their shoes.

57.     As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the

items on its website which are false due to the uniform imposition of the Processing Fee described herein. Indeed, Defendant concealed the true price of the items, and the true nature of the Processing Fee it was charging on each purchase, from Plaintiff and Class Members.

58. No reasonable consumer would expect the "Buy Now for" price advertised by Defendant to include an unlawful Processing Fee in addition to lawful sales tax and shipping costs. *See* Figures 2, 4, 9, 10; *see also Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 845-46 (E.D. Cal. 2024) ("Plaintiffs have sufficiently alleged [Defendant] advertises one price for its products while also surreptitiously charging a higher price by adding the Service Fee. Thus, Plaintiffs have sufficiently alleged [Defendant] advertises their goods with the intent not to sell them as advertised.").

59. Defendant, which operates a website selling clothing, does not provide services that would lead reasonable consumers to expect the imposition of the Processing Fee. It is unclear what, if any, "processing" customers accessing the website to purchase shoes would expect to pay for, and Defendant does not disclose the Processing Fee anywhere before customers reach the screen depicted in Figure 4 of this complaint.

60. Defendant willfully employed a scheme designed to advertise a price that is not the true cost of the shoes, and did so willfully, wantonly, and with reckless disregard for the truth.

61. On behalf of himself and members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages, and reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

## COUNT II
### California Civil Code § 1770(a)(29)(A)
### (On Behalf Of The Junk Fee Subclass)

62. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Junk Fee Subclass against Defendant.

64.    Defendant owns, operates, or controls the StockX.com website, which is a place where consumers can purchase sneakers, streetwear, trading cards, handbags, and watches.

65.    Defendant violated California Civil Code § 1770(a)(29)(A) by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" on the product selection screens depicted in Figures 2, 3, 4, 5, 7, and 10 of this Complaint.

66.    Defendant's per item "Processing Fee" is a "mandatory fee[] or charge[]" that must be paid in order to purchase the item.  Cal. Civ. Code § 1770(a)(29)(A).

67.    Plaintiff and Junk Fee Subclass Members were harmed because they were forced to pay Defendant's unlawfully applied Processing Fees.  Because the total cost of the shoes were not disclosed to Plaintiff and Junk Fee Subclass Members at the beginning of the purchase process, the resulting fees or charges that were applied were unlawful pursuant to California Civil Code § 1770(a)(29)(A).

68.    Plaintiff and Junk Fee Subclass Members were also harmed by not having the total cost of their shoes disclosed upfront at the start of the purchase process.  By not knowing the total cost of their shoes before selecting them for purchase from Defendant, Plaintiff and Junk Fee Subclass Members could not shop around for shoes from other shoe sellers like GOAT, Grailed, or Stadium Goods, just to name a few.  As such, Plaintiff and Junk Fee Subclass Members had no way of knowing whether they were getting the best deal their money could buy.  By hiding its processing charges, Defendant was able to reduce price competition and cause consumers like Plaintiff and Junk Fee Subclass Members to overpay.

69.    Plaintiff and Junk Fee Subclass Members relied on Defendant's false and misleading representations that the cost of the shoes did not include fees in choosing to purchase their shoes.

70.    On behalf of himself and members of the Junk Fee Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages, and reasonable attorneys' fees.  *See* Cal. Civ. Code § 1780.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Classes, prays for judgment as follows:

A.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

B.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.  For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

E.  For prejudgment interest on all amounts awarded;

F.  For an order of restitution and all other forms of equitable monetary relief;

G.  For injunctive relief as pleaded or as the Court may deem proper; and

H.  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 16, 2025

**BURSOR & FISHER, P.A.**

By: */s/ Stefan Bogdanovich*
Stefan Bogdanovich

Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

*Attorney for Plaintiff*