UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL MANSFIELD,
Plaintiff,
v.
STOCKX LLC,
Defendant.

Case No. 25-cv-04250-RFL

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 25

Daniel Mansfield accuses StockX of having engaged in "bait and switch" tactics when he bought a pair of shoes on the StockX mobile app. Allegedly, StockX quoted him an artificially low price on the shoes up front and only later revealed the real price, which included a previously undisclosed "processing fee." According to Mansfield, this practice violates California statutory prohibitions against bait and switch and a particular form of bait and switch known as "drip pricing." He accordingly commenced this action to recover on behalf of himself and two putative classes of StockX's California customers. (*See* Dkt. No. 23 (the "FAC").) StockX now moves to dismiss, arguing that: (1) Mansfield's allegations do not sufficiently demonstrate that he has Article III standing; and (2) he has not stated a valid claim. (*See* Dkt. No. 25 (the "Motion").)[1] For the reasons set forth below, the Motion is **DENIED**.

## I. BACKGROUND

The Court accepts the truth of Mansfield's allegations for purposes of resolving the Motion. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1021 n.1 (9th Cir. 2023) (facial challenge to subject matter jurisdiction); *Boquist v. Courtney*, 32 F.4th 764, 772

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

(9th Cir. 2022) (failure to state a claim).

### A. California Law Prohibits Bait and Switch and Drip Pricing

Bait and switch is a deceptive advertising tactic in which "the merchant intends to sell [something] significantly different from that which drew the potential customer in. The practice involves luring prospective purchasers through the bait of a desirable item, and then talking the customer into or steering him over to a less desirable item." *See Wood v. Honey Baked Ham, Inc.*, No. B261248, 2016 WL 6599928, at *3 n.3 (Cal. Ct. App. 2d Dist. Div. 7 Nov. 8, 2016) (citations and quotation marks omitted). For example, "a retail store [may] advertise[] a washing machine at a low price intending to attract consumers who will be told that all the machines have been sold and will be urged to buy a more expensive substitute." *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 460 (7th Cir. 2014). California banned bait and switch in consumer transactions when it passed the Consumers Legal Remedies Act (the "CLRA") in 1970. *See* James S. Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act*, 2 Pac. L. J. 1, 11 (1971). In that vein, the CLRA declares unlawful "[a]dvertising goods or services with intent not to sell them as advertised." *See* Cal. Civ. Code § 1770(a)(9).

A common form of bait and switch is drip pricing. "Businesses engage in drip pricing by advertising products at artificially low headline price[s] and then disclosing additional charges later in the buying process." *Harvey v. World Mkt., LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *1 (N.D. Cal. May 9, 2025) (citation and quotation marks omitted). "Consumers [subject to drip pricing] are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online." California Senate Rules Committee Analysis (Sept. 11, 2023) (S.B. 478). To address these concerns, California recently amended the CLRA to directly prohibit drip pricing. *See* 2023 Cal. Legis. Serv. Ch. 400 § 1(a) (S.B. 478). Accordingly, the CLRA now also bans "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than" taxes and shipping costs. *See* Cal. Civ. Code § 1770(a)(29)(A).

**B. StockX Allegedly Engages in Drip Pricing**

StockX sells a variety of consumer goods through its website and mobile app.[2] (*See* FAC ¶¶ 19-20.) Customers can purchase products directly or bid against each other. (*See id.* ¶ 19.) Regardless of whether customers buy or bid, StockX presents them with a "Buy Now" price when they first view the item:




(*See id.* ¶ 55.) This Buy Now price, however, does not reflect all mandatory fees. Rather, after a customer clicks "Buy or Bid" (and after they select an item size if necessary for the specific product), StockX takes them to a new page where it discloses at the bottom of the screen that the sale will include a processing fee:

[2] Because Mansfield alleges that he used the mobile app, and this Order addresses Mansfield's standing and the adequacy of his allegations, this description of the purchase process focuses on the app experience.




(*See id.* ¶ 56.) To view the amount of the fee, the customer must click on an arrow next to the subtotal, which opens a price breakdown:




(*See id.* ¶ 58.)

### C. Mansfield Bought Shoes from StockX Under the Influence of Drip Pricing

In April 2025, Mansfield bought a pair of shoes from StockX using the mobile app. (*See*

*id.* ¶ 86.) He initially placed a bid and later converted his bid into a direct buy. (*See id.* (citing paragraphs describing the bidding and conversion to direct buy processes on the mobile app).) The Buy Now price initially shown to Mansfield did not include StockX's mandatory processing fee, and StockX did not couple that initial price with a disclosure that it would charge a processing fee. (*See id.* ¶¶ 86-87.) Presented with this artificially low price, Mansfield continued with the purchase process instead of shopping around elsewhere. (*See id.* ¶¶ 89, 102.) "As such, [he] had no way of knowing whether [he was] getting the best deal [his] money could buy." (*See id.*) He ended up paying a $12.78 processing fee when he bought the shoes. (*See id.* ¶ 11.)

## II. LEGAL STANDARD

StockX moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6).

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject matter jurisdiction over the claims asserted. A defendant can challenge a court's subject-matter jurisdiction by mounting either: (1) a facial attack based solely on the allegations of the complaint; or (2) a factual attack based on evidence outside the pleadings. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial challenge, a court must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). Whether a plaintiff has Article III standing to proceed in federal court implicates Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### B. Rule 12(b)(6)

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Failure to satisfy this requirement may result in dismissal. *See id.* 12(b)(6). To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

> has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [This] standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).

Where a plaintiff alleges that a defendant engaged in fraudulent conduct, Rule 9(b) imposes a greater burden than does Rule 12(b)(6) and requires that the plaintiff "state with particularity the circumstances constituting fraud." To satisfy this heightened pleading standard, a plaintiff must allege facts "specific enough to [notify the defendants] of the particular misconduct [constituting fraud] so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation and quotation marks omitted). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *See Kearns*, 567 F.3d at 1124 (citation and quotation marks omitted). A plaintiff "must [also] set forth what is false or misleading about a statement, and why it is false." *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

## III. DISCUSSION

Mansfield brings claims under Sections 1770(a)(9) and 1770(a)(29)(A) of the CLRA. StockX argues that the Court should dismiss Mansfield's claims because: (1) he lacks Article III standing; and (2) he fails to state his claims. Neither argument succeeds.

### A. Article III Standing

Federal courts may preside over an action only where a plaintiff has Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). StockX argues that Mansfield lacks standing because he fails to sufficiently allege that he suffered any injury. But Mansfield alleges that he paid an unlawful fee and overpaid for his shoes, and each of those allegations satisfies the injury requirement.

#### 1. Unlawful Fee

StockX advertised shoes at a particular price and subsequently charged Mansfield a $12.78 processing fee on top of that price. The originally advertised price did not reflect the processing fee, and Mansfield paid the processing fee when he bought the shoes. The CLRA prohibits this practice, as it renders unlawful advertising the shoes for one price "that does not include all mandatory fees or charges other than" those imposed for taxes or shipping. *See* Cal. Civ. Code § 1770(a)(29)(A). Accordingly, Mansfield paid an unlawful fee. That payment constitutes an injury sufficient to confer Article III standing. *See, e.g.*, *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 919 (N.D. Cal. 2019) (allegations of paying unlawful fees sufficient for Article III standing); *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1086 (N.D. Cal. 2013) (same); *see also Maya*, 658 F.3d at 1069 ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. This is a quintessential injury-in-fact." (citation omitted)).

StockX argues that Mansfield nevertheless did not suffer an injury in fact because it

ultimately disclosed the processing fee before Mansfield purchased the shoes, and so Mansfield knowingly paid the fee. But whether Manfield knew about the fee prior to purchase has no bearing on whether paying the fee constituted an injury. Under Mansfield's allegations, StockX was not entitled to collect the fee in the first place without disclosing it up front. As such, StockX inflicted an injury when it charged, and Mansfield paid, the allegedly unlawful fee.

The decision in *Charles v. Color Factory, LLC*, No. 24-cv-00322-JSR, 2024 WL 1693236 (S.D.N.Y. Apr. 19, 2024), is instructive. The plaintiff there alleged that she purchased tickets from the defendant's website by clicking through several screens, the first of which displayed the tickets' cost, and that the website did not display "an additional $8.99 in Taxes & Fees" until she reached the "final checkout screen." *See id.* at *1 (quotation marks omitted). She sued the defendant for alleged violations of a New York statute prohibiting drip pricing in ticket sales. *See id.* at *2. The defendant argued that its disclosure of the additional fee on the final checkout screen prior to purchase rendered the plaintiff's harm "a bare procedural injury that is insufficient to confer standing." *See id.* at *3. But the court disagreed:

> Defendant, however, entirely overlooks that the complaint alleges that plaintiff suffered an economic injury that flowed from defendant's purported violation of the statute. Specifically, the complaint alleges that plaintiff was injured when she was charged and paid a fee that was rendered unlawful by defendant's failure to disclose the total cost . . . to [p]laintiff at the beginning of the purchase process and failure to clearly and conspicuously disclose[ ] [the fee] on the final checkout page in violation of [the New York statute in question]. The allegation that plaintiff paid an unlawful fee is a sufficiently concrete economic injury to confer standing.

*Id.* (citations and quotation marks omitted).

Implicit in StockX's disclosure argument lurks the familiar rule that "[p]urely self-inflicted injuries are insufficient" to establish standing. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020) (citation and quotation marks omitted). Under this principle, the argument goes, Mansfield cannot satisfy the causation requirement of standing because he knew about the processing fee and paid it anyway, so he, and not StockX, caused the injury. What causes the injury, however, is not the voluntary payment of

a fee but rather the charging of an unlawful fee that a consumer ultimately pays. True, there is another step in the process after the fee is charged before the injury is finally inflicted (*i.e.*, payment). But StockX's conduct need not be "the very last step in the chain of causation." *See California v. Trump*, 963 F.3d 926, 940 (9th Cir. 2020) (citation omitted). And although Mansfield performs the last step, he is not in any meaningful sense inflicting his own injury. To hold otherwise would mean every plaintiff who suffers an injury based on a voluntary payment lacks Article III standing. That is not the law. *See, e.g.*, *Maya*, 658 F.3d at 1070 (causation satisfied where defendants' conduct resulted in plaintiffs "overpay[ing]").

StockX also argues that the processing fee is *per se* not unlawful because the relevant provision of the CLRA regulates advertising and does not actually prohibit sellers from charging certain fees. That is a distinction without a difference. *See Cal. Corr. Peace Officers Ass'n v. State Pers. Bd.*, 10 Cal. 4th 1133, 1147 (1995) ("In construing a statute, a court may consider the consequences that would follow from a particular construction[,] and . . . a practical construction is preferred." (citation omitted)). The relevant provision of the CLRA renders unlawful "[a]dvertising, displaying, or offering a price . . . that does not include all mandatory fees or charges," except for taxes and shipping costs. *See* Cal. Civ. Code § 1770(a)(29)(A). Accordingly, once a seller advertises a price, the CLRA effectively locks in that price and prohibits the seller from charging any additional fees other than taxes or shipping costs. Thus, once StockX presented Mansfield with a price for shoes, the CLRA did indeed bar it from charging the $12.78 processing fee that it subsequently disclosed. *See also McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 954 (2017) ("[T]he Legislature directed that the CLRA be liberally construed and applied." (citation and quotation marks omitted)). The fee, therefore, was unlawful. *See, e.g.*, *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 605 (S.D.N.Y. 2025) ("Berryman experienced a concrete economic injury: the payment of a fee made unlawful by Reading's failure to timely disclose it.").

**2. Overpayment**

Mansfield expressly alleges that StockX's failure to disclose the final price of the shoes

he purchased caused him to "overpay." (*See* FAC ¶¶ 89, 102.) That allegation satisfies the injury requirement. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." (citations omitted)). StockX nevertheless objects that this allegation cannot satisfy the injury requirement. It observes that Mansfield's overpayment theory stems from his claim that the failure to disclose the processing fee at the outset prevented him from shopping around for shoes from other retailers. Specifically, Mansfield alleges:

> By not knowing the total cost of the[] shoes before selecting them for purchase . . ., [Mansfield] could not shop around for shoes from other shoe sellers . . . . As such, [Mansfield] had no way of knowing whether [he was] getting the best deal [his] money could buy. By hiding its processing charges, [StockX] was able to reduce price competition and cause consumers like [Mansfield] to overpay.

(FAC ¶¶ 89, 102.) According to StockX, "[i]t strains credulity to argue that because StockX charges a Processing Fee, [Mansfield] was somehow prevented from comparing prices on other websites." (*See* Dkt. No. 31 at 3-4.)

There is nothing implausible about Mansfield's theory. A consumer who sees artificially low prices may overinvest their time in browsing the seller's goods, and, once the true price is revealed, may still decide to go forward with the purchase because they don't want to invest additional time to shop around more. In such a situation, a consumer may "feel pressured to accept these add-on[] [prices] because, in large part, they have already engaged in search, have limited time and resources to continue the search, and already 'committed' to complete the transaction." *See* David Adam Friedman, *Regulating Drip Pricing*, 31 Stan. L. & Pol'y Rev. 51, 57 (2020) (citation omitted); *see also Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 921 (2d Dist. Div. 4 2016) ("[O]ne of the dangers [with bait and switch advertising] is that the consumer will rely on the deceptive advertising to decide to buy merchandise. Then, when the deception is revealed, the consumer, now invested in the decision to buy and swept up in the

momentum of events, nonetheless buys at the inflated price, despite his or her better judgment.”). Thus, drip pricing “makes price comparison difficult, . . . disincentivizes true price competition, and leads to higher prices for the market without any corresponding benefit to consumers forced to pay these hidden fees.” *See* California Senate Rules Committee Analysis (Sept. 11, 2023) (S.B. 478). This rationale adequately supports Mansfield’s overpayment theory at the pleading stage. To the extent StockX disputes whether delayed disclosure of the processing fee actually disincentivized consumers from shopping around or caused consumers to pay higher prices than they otherwise would have, that dispute presents a factual question inappropriate for resolution at this juncture.

In sum, Mansfield sufficiently alleges that he suffered an injury in fact.[3]

**B. Stating CLRA Claims**

StockX essentially offers three reasons why Mansfield fails to state his two CLRA claims: (1) he lacks statutory standing; (2) his Section 1770(a)(29)(A) claim does not apply to bids; and (3) his Section 1770(a)(9) claim does not apply because he received exactly what he purchased.

**1. Statutory Standing**

Statutory standing under the CLRA requires reliance and damages. *See Kaing v. Pultegroup, Inc.*, 464 F. App’x 630, 632 (9th Cir. 2011). StockX argues that Mansfield’s allegations satisfy neither requirement.

**a. Reliance**

For fraudulent omission claims under the CLRA,

> [a]n essential element . . . is actual reliance. To prove reliance on an omission, a plaintiff must show that the defendant’s nondisclosure was an immediate cause of the plaintiff’s injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a

[3] StockX argues that Mansfield fails to satisfy the causation requirement of Article III standing for the same reason that he fails to satisfy the injury requirement. (*See* Motion at 13.) Because Mansfield sufficiently alleges that he suffered an injury, this argument fails.

> substantial factor in his decision. A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently."

*See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citations and quotation marks omitted). StockX argues that Mansfield's allegations do not satisfy this standard because it eventually disclosed the processing fee before Mansfield executed his purchase, and Mansfield went ahead with the purchase anyway. In other words, StockX contends, awareness of the initially omitted information did not cause Mansfield to behave differently. *See, e.g.*, *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016) (no reliance where the plaintiff "has not alleged that the omission of the challenged information in any way impacted her behavior").

This theory evaluates reliance at the wrong moment. The challenged business practice involves an initial price communication that allegedly omits information. Only later in the sales process does StockX reveal the allegedly missing information. But at that point, the initial omission may have already influenced the consumer's behavior. Thus, reliance must be evaluated at the moment of the initial omission, *i.e.*, when the consumer views the initial price communication, and not later upon eventual disclosure of the true price. Here, Mansfield's allegations permit the reasonable inference that, when he first saw the initial price communication, he did not know the true price would include an additional processing fee. (*See* FAC ¶¶ 86-87.) Presented with this artificially low price, Mansfield continued with the sales process at StockX instead of looking for a better deal elsewhere. (*See id.* ¶¶ 89, 102.) Therefore, failure to disclose the true price at the initial phase of the shopping experience disincentivized Mansfield from shopping around at rival retailers. That constitutes a sufficient allegation of reliance.

The CLRA's ban against drip pricing also permits a presumption of reliance here. As detailed above, the California Legislature barred the practice based on its determination that the practice often misleads consumers and interferes with their ability to compare options. The prohibition of "a particular misleading advertising practice is evidence that" the practice

"constitutes a material misrepresentation." *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (citation and quotation marks omitted). And courts may "presume[], or at least infer[]," reliance "when the omission is material." *See Daniel*, 806 F.3d at 1225 (citation omitted)). To the extent StockX seeks to rebut this presumption by showing that its practices do not interfere with consumers' ability to transparently compare options, that dispute presents a factual question inappropriate for resolution at this juncture. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020).

Were the Court to instead accept StockX's theory that reliance can be measured at any point in the sales process, such that an initial omission corrected with a late disclosure would defeat any assertion of reliance, doing so would essentially gut the statutory prohibition against drip pricing:

> When a business engages in drip pricing, consumers are left with two choices: they can proceed with their purchase after discovering the initially undisclosed fees or decide not to buy the product they wanted. In either scenario, . . . the business could argue that those consumers do not have statutory standing to recover under section 1770(a)(29). In the former situation the consumers would arguably lack reliance (having purchased the product after learning of added fees), while in the latter they would arguably lack damages (having incurred no expense at all). Surely the Legislature did not pass a law with no practical effect . . . .

*Harvey*, 2025 WL 1359066, at *4 (citation omitted). The Court declines to interpret the drip pricing provision in a manner that renders it meaningless. *E. Bay Mun. Util. Dist. v. App. Dep't*, 23 Cal. 3d 839, 843 (1979) ("A statute, of course, must be construed toward giving it meaning and effect." (citations omitted)).

**b. Damages**

"[T]o bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009). As it did in the context of Article III standing, StockX argues that Mansfield fails to sufficiently allege that he suffered any harm. But as explained above, Mansfield sufficiently alleges that he suffered an economic injury (*i.e.*, payment of an unlawful fee and overpayment

for shoes). That injury satisfies the CLRA's damages requirement. *See Reid v. Jonhson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (economic injury under the CLRA "demands no more than the corresponding requirement under Article III"); *see, e.g.*, *Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019) (allegations of economic harm sufficient under Article III also sufficient under CLRA).

In sum, Mansfield sufficiently alleges that he has statutory standing.

**2. Bidding Under Section 1770(a)(29)(A)**

Mansfield argues that the drip pricing provision of the CLRA does not apply when a buyer places a bid (as opposed to buys a product right away) for two reasons: "(1) a user is not purchasing a product when they place a bid; and (2) the full price—including the Processing Fee—is prominently displayed in real time as a user places a bid." (*See* Motion at 17-20.) As to the first argument, Section 1770(a)(29)(A) does not limit its reach to purchases as opposed to bids. What matters is StockX's advertisement, display or offer of a price that does not include the processing fee, and under Mansfield's allegations, a customer must view a screen displaying that price before they can select the option to place a bid. (*See* FAC ¶ 55.) That same price display also defeats the second argument. While StockX may disclose its processing fee when a customer places a bid, StockX shows them a price without disclosing the processing fee before they reach the bid screen.

**3. Goods as Advertised Under Section 1770(a)(9)**

StockX agrees that Section 1770(a)(9) prohibits bait and switch tactics but disputes that Mansfield's allegations describe such tactics, because Mansfield "received the shoe he intended to purchase at the agreed upon price." (*See* Motion at 21.) But as alleged by Mansfield, StockX initially advertised the shoes at an artificially low price that it never intended to honor. That falls within the scope of Section 1770(a)(9) regardless of whether Mansfield agreed to a final price for shoes that otherwise conformed to their advertised characteristics. *See* Civ. Code § 1770(a)(9) (unlawful to "[a]dvertis[e] goods or services with intent not to sell them as advertised"). Moreover, the California Legislature expressly found drip pricing to constitute a "form[] of bait

and switch advertising." *See* 2023 Cal. Legis. Serv. Ch. 400 § 1(b) (S.B. 478).

## IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 3, 2025

RITA F. LIN
United States District Judge